IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HADI NOUREDINE,                              3:11-CV-00410-ST

       Plaintiff,

                             OPINION AND ORDER

v.

DIVERSITY ESCROW, INC., a
California corporation;
CHRISTINA ESPITIA, a citizen
of California; DAVID JIMENEZ
a citizen of California; DIRA
INVESTMENTS, INC., a
California corporation; and
DIANA LOPEZ, a citizen of
California,

       Defendants.


FREDERICK M. MILLARD
DOUGLAS M. BRAGG
Fred Millard, Attorney at Law P.C.
6650 S.W. Redwood Lane
Suite 330
Portland, OR 97224

      Attorneys for Plaintiff

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#8) for Order of Default and Judgment by Default.  The Court held a hearing on Plaintiff's Motion on January 24, 2012.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiff's Complaint and Plaintiff's materials filed in support of his Motion for Order of Default and Judgment by Default:

In February 2010 Defendant Dira Investments, Inc., contacted Plaintiff Hadi Nouredine requesting a loan of $400,000 to enable Dira to purchase real property in California.  Dira promised Plaintiff that the loan would be immediately repaid from the proceeds of other property sales that Dira was in the process of completing.  Plaintiff refused Dira's request.

Shortly after refusing the request to make the loan, Defendants Christina Espitia and Diana Lopez, both employees of Diversity Escrow, Inc., contacted Plaintiff to "pressure him" into going forward with the loan.  During Plaintiff's conversations with "Diversity and its agents," Diversity advised Plaintiff that Dira had sold two other properties.  According to Diversity, Dira was to receive the proceeds from its other

2 - OPINION AND ORDER

property sales "within two to three weeks."  "Diversity and its
agents" represented to Plaintiff that Dira would receive at least
$500,000 from the other property sales.

At some point Plaintiff asked Bassel Ayoub[1] to contact
Diversity to ascertain whether Diversity was bonded and carried
errors-and-omissions insurance coverage.  Ayoub spoke with Lopez,
who advised him that Diversity was bonded and carried $1 million
in errors-and-omissions coverage.  Ayoub conveyed that
information to Plaintiff.

On February 24, 2010, Espitia sent Plaintiff a letter in
which she advised Plaintiff that Diversity was

> issuing [Plaintiff] a check for $400,000.00 . . .
> for payment of [the California property purchase
> loan]. . . .  The reason that the check has
> another date is because even though [Diversity] is
> in receipt of funds from Dira Investments, Inc.,
> they will not be available until March 10, 2010.
>
> Escrow Holder [sic], Diversity Escrow, Inc. will
> be responsible for the disbursement of these
> funds.

Decl. of Hadi Nouredine, Ex. A at 1.  With that letter Espitia
enclosed a check for $400,000.00 post-dated March 10, 2010, and
signed by Diversity's agent, David Jimenez.  On February 24,
2010, Plaintiff made a wire transfer of $400,000 to an account
provided by Diversity in reliance on assurances from Diversity

---

[1] The record does not reflect Ayoub's relationship to
Plaintiff or his qualifications to make a determination as to
whether Diversity was bonded or carried errors-and-omissions
coverage.

3 - OPINION AND ORDER

that it would repay Plaintiff by March 10, 2010.

In early March (before March 10, 2010), Diversity contacted Plaintiff and advised him that the March 10, 2010, check sent to Plaintiff "would not be honored" because the account on which the check was drafted did not have sufficient funds. Diversity issued a new check to Plaintiff for $200,000 in March 2010.

Following receipt of the $200,000, Plaintiff had "several" telephone conversations with Espitia and Lopez regarding the $200,000 still owed to Plaintiff. Espitia and Lopez assured Plaintiff that Diversity would pay Plaintiff the $200,000 owed to him. Diversity, however, never made any additional payments to Plaintiff.

In May or June 2010, Plaintiff attempted to deposit the March 10, 2010, check for $400,000 from Diversity. The bank refused to accept the check due to insufficient funds.

On December 9, 2010, Plaintiff sent a demand letter to Diversity for the unpaid $200,000 balance of Plaintiff's loan. No one responded to the demand letter.

On March 31, 2011, Plaintiff filed this action against Diversity, Espitia, Jimenez, Dira, and Lopez alleging claims for (1) common-law fraud; (2) common-law fraud "through mail"; (3) common-law fraud "through wire fraud"; (4) common-law fraud "by racketeering acts"; (5) violations of the Racketeering and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*;

(6) violation of Oregon's "Bad Check" law, Or. Rev. Stat.
§ 30.701; (7) intentional misrepresentation; (8) negligent
misrepresentation; (9) negligence *per se*; (10) breach of
fiduciary duty; (11) conversion; (12) promissory estoppel; and
(13) unjust enrichment.   Plaintiff seeks compensatory and
punitive damages.

On October 12, 2011, Plaintiff filed a Motion for Order of
Default and Judgment by Default seeking entry of default and
default judgment against Defendants Diversity, Espitia, and
Jimenez on the ground that they had failed to appear and to
defend.[2]

On December 2, 2011, the Court issued an Order in which it
granted Plaintiff's Motion to the extent that the Court concluded
the uncontested record reflects Diversity, Espitia, and Jimenez
failed to appear or to defend this matter within the time
required by law.   The Court, therefore, directed the Clerk to
enter default as to Diversity, Espitia, and Jimenez.   The Court
directed Plaintiff to file a memorandum "summarizing the facts
and law" and set a *prima facie* hearing on January 24, 2012.

At the hearing on January 24, 2012, the Court granted
Plaintiff's Motion for Judgment by Default as to Plaintiff's

---

[2] At the January 24, 2012, hearing, Plaintiff advised the
Court that he did not intend to take any further action against
Dira and that Lopez had filed for bankruptcy protection.   The
Court stayed this matter as to Lopez.

first claim for common-law fraud and denied Plaintiff's Motion
for Judgment by Default as to Plaintiff's claims for common-law
fraud "through mail," common-law fraud "through wire fraud,"
common-law fraud "by racketeering acts," and violations of RICO.
At the hearing Plaintiff conceded his claims for intentional
misrepresentation, negligent misrepresentation, negligence *per
se*, breach of fiduciary duty, conversion, promissory estoppel,
and unjust enrichment were subsumed in his first claim for
common-law fraud.  Accordingly, the Court also denied Plaintiff's
Motion for Judgment by Default as to Plaintiff's claims for
intentional misrepresentation, negligent misrepresentation,
negligence *per se*, breach of fiduciary duty, conversion,
promissory estoppel, and unjust enrichment.

At the conclusion of the hearing the Court directed
Plaintiff to file a supplemental brief as to Plaintiff's claim
for violation of Oregon's Bad Check law no later than February
16, 2012.  The Court took Plaintiff's claim for violation of
Oregon's Bad Check law and Plaintiff's request for punitive
damages under advisement on February 16, 2012.


## DISCUSSION

### I.   Plaintiff's claim for violation of Oregon's "Bad Check" law.

In his Complaint Plaintiff asserts a claim for violation of
Oregon's "Bad Check" law.  Specifically, Plaintiff alleges:

Defendants Diversity Escrow Inc, Ms. Espitia, Ms. Lopez and Mr. Jimenez were the makers of Check 1020 that was delivered to Plaintiff on or about February 24, 2010.  Check 1020 was postdated to March 10, 2010.

After the posted date of March 10, 2010, the account from which the check was to be drawn had insufficient funds.  The payment was stopped by Defendants Diversity Escrow Inc, Ms. Espitia, Ms. Lopez and Mr. Jimenez.

Plaintiff had a right to the amounts drafted in Check 1020 at the time he intended to negotiate the instrument.

As a direct and proximate result of Defendants Diversity Escrow Inc, Ms. Espitia, Ms. Lopez and Mr. Jimenez's acts described above, Plaintiff has suffered damages, and is entitled to recovery of an amount equal to triple the amount of such damages as per ORS 30.701 (1).

Compl. at ¶¶ 57-60.

**A.    Liability.**

Oregon Revised Statute § 73.0502(1)(a) provides in pertinent part:

> (1)  Dishonor of a note is governed by the following rules:
>
> (a)  If the note is payable on demand, the note is dishonored if presentment is duly made to the maker and the note is not paid on the day of presentment.

Although Oregon Revised Statute § 73.0503(3) requires notice to the maker when a check has been dishonored, notice is excused when, as alleged here, "[t]he maker . . . has repudiated an obligation to pay the instrument." Or. Rev. Stat. § 73.0504(1)(b).

7 - OPINION AND ORDER

On this record the Court concludes Plaintiff has established the $400,000 check he received from Diversity was dishonored and any notice requirement was waived by Diversity's repudiation of the instrument in early March 2010.

**B.   Damages.**

Plaintiff seeks damages pursuant to Oregon Revised Statute § 30.701(1), which provides in pertinent part:

> In any action against a maker of a dishonored check, a payee may recover from the maker statutory damages in an amount equal to $100 or triple the amount for which the check is drawn, whichever is greater.  Statutory damages awarded under this subsection are in addition to the amount for which the check was drawn and may not exceed by more than $500 the amount for which the check was drawn.  The court shall allow reasonable attorney fees . . . to the prevailing party in an action on a dishonored check.

Pursuant to this provision, Plaintiff alleges he is entitled to $200,000 for the unpaid portion of the dishonored check, $400,500 in statutory damages (three times $200,000, but no more than $400,000 plus $500), and attorneys' fees and costs.  The Court agrees.  Accordingly, the Court awards Plaintiff $600,500 as to his dishonored-check claim.[3]

---

[3] Plaintiff acknowledged at the hearing that he sought $200,000 in damages for the unpaid portion of Plaintiff's loan as damages under all of his theories.  Plaintiff, however, may not recover twice for the same damages.  Accordingly, the Court awards economic damages to Plaintiff on his common-law fraud and dishonored-check claims in the total amount of $200,000.  The Court awards Plaintiff an additional $400,500 in statutory damages on his dishonored-check claim.

## II.  Punitive damages on Plaintiff's common-law fraud claim.

At the January 24, 2012, hearing, Plaintiff advised the
Court that he had "a hard time putting a number on punitive
damages," but suggested treble damages were appropriate.  As the
Court explained at the hearing, the Court questions whether
Plaintiff has established the fraud in this matter went beyond
"garden-variety" fraud and into the realm of malicious and/or
reprehensible conduct sufficient to award punitive damages.  In
addition, the Court already has awarded Plaintiff $600,500 in
damages on his dishonored-check claim.

Accordingly, because it does not appear Plaintiff has
justified an award of punitive damages under Oregon law, the
Court declines to award Plaintiff such damages on his common-law
fraud claim.

## III. Attorneys' Fees.

Plaintiff seeks $14,592.50 in attorneys' fees and $905.55 in
costs.

### A.  Plaintiff is entitled to reasonable attorneys' fees.

As noted, Oregon Revised Statute § 30.701(1) provides
"the court shall allow reasonable attorney fees . . . to the
prevailing party in an action on a dishonored check."

Accordingly, the Court concludes Plaintiff is entitled
to reasonable attorneys' fees and costs in this matter.

B. **Plaintiff is entitled to attorneys' fees in the amount of $10,639.80.**

As noted, Plaintiff seeks $14,592.50 in attorneys' fees comprised of $330 for 1.1 hours of work performed by Fred Millard, $4,560 for 15.2 hours of work performed by Doug Bragg, $5,642.50 for 30.50 hours of work performed by law clerk Diego Conde, $2,571.50 for 13.90 performed by law clerk Chris Fanning, and $1,488.50 for 11.45 hours of work performed by unidentified paralegals. *See* Ex. 1.

1. **Standards.**

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009)(quotation omitted).

When determining the amount of an award for attorneys' fees, Oregon Revised Statute § 20.075(2) directs the Court to consider:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

Plaintiff does not point to any evidence in the record related to factors (b), (e), (f), or (h) and little evidence in the record as to factor (a). Accordingly, the Court addresses only the evidence relating to factors (a), (c), (d), and (g) in its analysis.

   2.   **The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding, and the skill needed to properly perform the legal services.**

This case did not involve a complicated set of facts. It involved only two transactions: Plaintiff's loan to Diversity and Diversity's failure to pay Plaintiff's loan in full. In addition, the facts leading to the loan and failure to pay were not overly complicated. Although Plaintiff asserted numerous claims in his Complaint, Plaintiff conceded at the hearing that the majority of those claims "collapsed" into the common-law fraud claim. As also noted at the hearing, Plaintiff

11 - OPINION AND ORDER

failed to plead sufficient facts to establish the more complicated RICO claim.  Accordingly, the Court concludes the time and labor required in this proceeding was not extensive, the questions involved were not difficult, and only a moderate level of skill was required to perform the legal services.

   3.   **The amount involved in the controversy and the results obtained.**

Plaintiff sought $200,000 in compensatory damages plus punitive and/or additional statutory damages in their Complaint.  Plaintiff achieved success with respect to the total amount of damages sought in this action and obtained the end result they sought in his Complaint.

   4.   **The fee customarily charged in the locality for similar legal services and the experience, reputation, and ability of the attorneys performing the services.**

As noted, Plaintiff seeks attorneys' fees of $14,592.50 comprised of work by two attorneys, two law clerks, and an unspecified number of paralegals.

   a.   **Hourly rates for attorneys.**

To determine the reasonable hourly rate, this Court uses the most recent Oregon State Bar Economic Survey published in 2007 (Oregon 2007 Survey) as its initial benchmark. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors.

Frederick Millard had between 13 and 14 years

of experience during the course of this action and requests $300 per hour. According to the Oregon 2007 Survey, Portland attorneys with Millard's level of experience bill on average at a rate of $225 per hour. The 75th percentile of Portland attorneys with his level of experience bill at an average hourly rate of $275. Millard has established his work in this matter is more similar to attorneys in the 75th percentile. Adjusting the rate of $275 for inflation from 2007 to 2012, the Court concludes the requested rate of $300 per hour is a reasonable rate for Millard's services.[4]

Douglas Bragg had between 10 and 11 years of experience during the course of this action and requests $300 per hour. According to the Oregon 2007 Survey, Portland attorneys with his level of experience bill on average at a rate of $235 per hour. The 75th percentile of Portland attorneys with his level of experience bill at an average hourly rate of $290. Bragg has established his work in this matter is more similar to attorneys in the 75th percentile. Adjusting the rate of $290 for inflation from 2007 to 2012, the Court concludes the requested rate of $300 per hour is a reasonable rate for Bragg's services.

Plaintiff provides scant information about

---

[4] To accomplish such an adjustment, the Court adds annual inflation factors based on the Consumer Price Index of 3.85% for 2008, -0.34% for 2009, 1.64% for 2010, 3.2% for 2011, and 2.9% for 2012 to the appropriate Oregon State Bar Survey hourly rate. See Ex. 1.

Diego Conde's experience and describes him as a "law clerk" in Plaintiff's fee request.  Bragg states in his Declaration that Conde is "licensed in both Oregon and Puerto Rico as an attorney."  Decl. of Douglas Bragg at ¶ 13.  The Oregon State Bar Membership Directory reflects Conde was admitted to the Oregon State Bar on May 6, 2011.  The Court, therefore, assumes for purposes of Plaintiff's Motion that Conde had between zero and one year of experience during the course of this action. According to the Oregon 2007 Survey, Portland attorneys with this level of experience bill on average at a rate of $165 per hour. Adjusting the rate of $165 for inflation from 2007 to 2012, the Court concludes the requested rate of $185 per hour is a reasonable rate for Conde's services.

Plaintiff also provides scant information about Christopher Fanning's experience and describes him as a "law clerk" in Plaintiff's fee request.  Bragg states in his Declaration that Fanning is a "licensed attorney with the Oregon State Bar."  Decl. of Douglas Bragg at ¶ 13.  The Oregon State Bar Membership Directory reflects Fanning was admitted to the Oregon State Bar on October 6, 2011.  The Court, therefore, assumes for purposes of Plaintiff's Motion that Fanning had between zero and one year of experience during the course of this action.  According to the Oregon 2007 Survey, Portland attorneys with this level of experience bill on average at a rate of $165

per hour.  Adjusting the rate of $165 for inflation from 2007 to
2012, the Court concludes the requested rate of $185 per hour is
a reasonable rate for Fanning's services.

### b.    Hourly rates for paralegals.

Plaintiff requests 11.45 hours of paralegal
time at $130 per hour.[5]  Bragg states in his Declaration that
"Millard & Bragg, Attorneys at Law, employs two staff paralegals.
The paralegals are Tracey Poole who has over 20 years experience
and Michele Barbara who is a certified paralegal with over 8
years experience."  Bragg Decl. at ¶ 14.  Plaintiff, however, did
not provide any information regarding the reasonable hourly rates
for paralegals in the Portland area where these individuals
worked.  Accordingly, the Court reduces to $75 per hour (a more
moderate rate that the Court can support on this record) the rate
at which fees may be awarded for paralegal time.

### c.    Hours reasonably expended.

The "district court may attempt to identify
specific hours that should be eliminated. . . ."  *Hensley v.
Eckerhart*, 461 U.S. 424, 436-37 (1983).

Plaintiff requests a total of 16.3 hours of

_____

[5] Plaintiff asserts in his fee request that he seeks fees
for paralegal time at $110 per hour.  In Bragg's Declaration,
however, Plaintiff seeks fees for paralegal time at $130 per
hour.  Plaintiff's fee calculations are based on the $130 per
hour rate.  Accordingly, the Court assumes Plaintiff intended to
seek remuneration for paralegal time at the rate or $130 per
hour.

attorney time and 55.85 hours of law-clerk and paralegal time.
As noted, the issues in this case were not complicated factually
or legally nor was it an extended action.  The Court, therefore,
concludes the total amount of hours for the work of law clerks
and paralegals requested by Plaintiff is excessive.  Accordingly,
the Court reduces the total number of hours requested by
Plaintiff for law-clerk and paralegal time by 30%.

Based on these adjustments, the Court awards fees to
Plaintiff in the amount of **$10,639.80.**

### C. **Plaintiff is entitled to costs in the amount of $608.**

Plaintiff requests costs in the amount of $905.55 for
filing this action, service of process, facsimiles, copy charges,
postage, computerized research, "surety bond documents," and
"Servicemembers Civil Relief Act Centralized Verification
Service."

### 1. **Standards.**

Absent a showing of circumstances not relevant
here, an award of costs is governed by federal law.  *See Champion
Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022
(9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax
specific items as costs against a losing party pursuant to
Federal Rule of Civil Procedure 54(d)(1).  Section 1920 provides:

> A judge or clerk of any court of the United States
> may tax as costs the following:

16 - OPINION AND ORDER

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

As noted, costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. Fed. R. Civ. P. 54(d). The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010). *See also Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990)(citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)).

### 2.    **Analysis**.

Plaintiff seeks $350 for the cost of filing this action. The cost of filing an action is specifically allowed under § 1920. Accordingly, the Court awards Plaintiff $350 for filing fees.

Plaintiff seeks $258 for process service. The

17 - OPINION AND ORDER

Ninth Circuit has concluded the costs for private service of
process are taxable costs under § 1920(1). Accordingly, the
Court awards Plaintiff $258 for the cost of process service.

Plaintiff seeks $6.46 in postage and facsimile
costs. Costs for postage and facsimile charges, however, are
outside the scope of § 1920. *See, e.g., Kraft v. Arden*, No. CV.
07-487-PK, 2009 WL 73869, at *9 (D. Or. Jan. 8, 2009), and *Toll
Brothers, Inc. v. Chang Su-O Lin*, No. 08-987 SC, 2009 WL 1816993,
at *8 (N.D. Cal. June 25, 2009). Accordingly, the Court declines
to award Plaintiff those costs.

With respect to photocopying costs, § 1920 permits
a prevailing party to recover "fees for exemplification and
copies of papers necessarily obtained for use in the case." 28
U.S.C. § 1920(4). Section 1920(4), however, does not allow for
recovery of the cost of photocopies prepared solely for
convenience of the attorneys. *Kraft*, 2009 WL 73869, at *9. "A
party's conclusory assertion that all copies were reasonably and
necessarily obtained is, by itself, insufficient." *Id*. Here
Plaintiff seeks $146.35 in photocopying costs. Bragg states in
his Declaration that "the . . . costs in this case are necessary
and reasonable." The record, however, does not reflect for what
purpose the photocopies at issue were obtained. As noted, such a
general assertion that the costs incurred in an action were
"reasonable and necessary" is insufficient to support a request

for photocopying charges under § 1920(4).  Accordingly, the Court
declines to award Plaintiff photocopying costs.

Plaintiff seeks $70.44 for computerized research.
The Ninth Circuit, however, has held charges for computerized
legal research do not fall within the scope of costs recoverable
under 28 U.S.C. § 1920.  *See Trs. of Constr. Indus. & Laborers
Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253,
1257-58 (9th Cir. 2006)(charges for computerized legal research
do not fall within scope of 28 U.S.C. § 1920).  *See also Kraft*,
2009 WL 73869, at *9.  Accordingly, the Court declines to award
Plaintiff costs for computerized research.

Plaintiff seeks $1.50 for "Surety Bond Documents."
The record does not reflect the purpose or nature of this charge.
In addition, at least one circuit court has concluded "premiums
paid for a supersedeas bond or other bond to preserve rights"
during the pendency of litigation are not taxable costs under
§ 1920.  *See Republic Tobacco Co. v. N. Atlantic Trading Co.*, 481
F.3d 442, 447 (7th Cir. 2007).  Absent any explanation of the
purpose or nature of this cost or authority to support the award
of this cost under § 1920, the Court declines to award Plaintiff
$1.50 for the cost of surety bond documents.

Plaintiff seeks $72.80 for "Servicemembers Civil
Relief Act Centralized Verification Service."  The record does
not reflect the purpose or nature of this charge nor does

19 - OPINION AND ORDER

Plaintiff cite to any authority to support taxing this cost under § 1920. Absent any explanation of the purpose or nature of this cost or authority to support the award of this cost under § 1920, the Court declines to award Plaintiff $1.50 for the cost of surety bond documents.

In summary, the Court awards costs to Plaintiff in the amount of $608.[6]

## IV.  Prejudgment Interest.

Plaintiff seeks prejudgment interest at a rate of 9% per annum from March 10, 2010, to the present on $200,000, which is the balance of his loan to Diversity.

Oregon Revised Statute § 82.010 provides for prejudgment interest at a rate of 9% per annum. "Under Oregon law, a court may award prejudgment interest only when the exact amount, and the time from which interest should run, is ascertained or easily ascertainable." *West Linn Corporate Park, LLC v. City of West Linn*, No. CV-01-1787-HZ, 2011 WL 4708774, at *4 (D. Or. Oct. 4, 2011)(citing *Farhang v. Kariminaser*, 230 Or. App. 554, 556, 217 P.3d 218, 219 (2009)). Here the record reflects as of March 10, 2010, Diversity acknowledged it was required to repay Plaintiff's loan. In addition, Diversity repudiated the $400,000 check it provided to Plaintiff to be cashed on March 10, 2010, and instead paid Plaintiff only $200,000.

---

[6] See Exhibit 2 for calculation of costs.

On this record the Court concludes Plaintiff has established the exact amount he is due ($200,000) and the time from which the interest should run (March 10, 2010, to present). Accordingly, the Court awards Plaintiff prejudgment interest at the rate of 9% per annum on $200,000 from March 10, 2010, to the present.

## V.  Post-Judgment Interest.

Plaintiff seeks post-judgment interest at 9% "until paid." Oregon Revised Statute § 82.010 provides for post-judgment interest at the rate of 9% per annum.

The Court, therefore, awards Plaintiff post-judgment interest at the rate of 9% per annum from entry of partial judgment until Defendants pay Plaintiff the amount that he is owed.


## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#8) for Order of Default and Judgment by Default as to Plaintiff's dishonored-check claim in the amounts described herein.

The Court **DIRECTS** Plaintiff to file a form of partial judgment pursuant to Rule 54(b) against Defendants Diversity, Espitia, and Jimenez in accordance with the terms of this Opinion and Order.

The Court further **DIRECTS** Plaintiff to file **no later than April 23, 2012,** a status report setting out any issues remaining

21 - OPINION AND ORDER

in this case or closing papers to resolve same.

IT IS SO ORDERED.

DATED this 10th day of April, 2012.


ANNA J. BROWN
United States District Judge